## DEAN v. ALEXANDRIA COCA–COLA BOTTLING CO., Inc.

### No. 4586.

Court of Appeal of Louisiana. Second Circuit.

June 5, 1933.

Appeal from Ninth Judicial District Court, Parish of Rapides; R. C. Culpepper, Judge.

Action by Bernard Dean against Alexandria Coca-Cola Bottling Company, Incorporated. From a judgment for defendant, plaintiff appeals.

■ Coleman D. Reed, of Oakdale, and F. B. Cappel, of Alexandria, for appellant.

Polk & Robinson and Hawthorn, Stafford & Pitts, all of Alexandria, for appellee.

DREW, Judge.

Plaintiff sued for damages in the sum of $591.50. He alleged that he purchased a bottle of Coca-Cola from a dealer who had purchased same from defendant; that he had drunk most of the contents of the bottle when he discovered a foreign substance in it which was filthy and slimy; that immediately after drinking the Coca-Cola he became sick and nauseated, and was confined to bed under the care of a physician for a period of two weeks. He itemized his damages and alleged they were caused by the poisoned Coca-Cola, due to the fault and negligence of defendant company in allowing the foreign substance to remain in the bottle and in not detecting it before offering it for sale for consumption by the public.

The defense is a general denial, and it further alleged the system of washing bottles and bottling of drinks by defendant, and the impossibility of any foreign substance getting in and remaining in the bottle after washing and while bottling the Coca-Cola at its plant.

The lower court rejected the demands of plaintiff, and he has appealed to this court.

Defendant bottled the Coca-Cola and sold it to the dealer from whom plaintiff purchased it. Plaintiff had drunk the greater portion of the contents of the bottle when one of his companions who was drinking with him discovered a foreign substance in the bottle. Plaintiff, his two companions, the dealer who sold it, and the doctor who saw the bottle soon thereafter, all swear there was a foreign substance in the bottle. They differ some as to what it appeared to be, but all agree it appeared to be slimy and filthy and was about the size of a pencil and from one inch to an inch and a half long. The doctor said it nauseated him to look at it. This testimony is not contradicted, and we know of no reason from the record for not accepting it as true. It was taken out of court by a deposition and filed in evidence on the day of trial.

About one hour after drinking from the bottle, plaintiff became nauseated and sent for a doctor. He remained in bed for about two weeks under the care of a doctor, and anything he ate during that period caused him to vomit. He lost weight and was no doubt sick. The physician pronounced it ptomaine poisoning.

Defendant's plant was up to date and every precaution taken to prevent foreign substances from getting into the bottled drinks. This alone, however, is not sufficient if plaintiff has proved that the foreign substance in the bottle of Coca-Cola was the cause of his sickness. Defendant contends that it is impossible for any foreign substance to remain in a bottle while going through its washing plant, yet, after the bottle is filled, they have an employee to look at each bottle over a light to see if any foreign substance is in there. If it is impossible for any foreign substance to get in or to remain there while the bottle is going through the washing plant and being filled, it strikes us that it would be unnecessary to have an employee on the pay roll to look for an impossible thing to happen. However, plaintiff has failed to show the court that the bottle had not been tampered with while in the possession of the dealer from whom he purchased it. The dealer was his witness, and this information should have been elicited from him. Plaintiff has likewise failed to inform the court as to what he ate and drank on the day and night before he became sick. There are many things that might cause ptomaine poisoning, and it was incumbent upon plaintiff to inform the court what he had been eating and drinking in order that, by a process of elimination, if it could be made, the court could say with some degree of certainty that the foreign substance in the Coca-Cola was the cause of his sickness. The testimony of the chemist who examined the remaining contents of the Coca-Cola bottle is that the foreign substance found in the bottle was of the vegetable family and appeared to be a disintegrated bean, and would not cause the severe sickness complained of by plaintiff. With this testimony in the record, it was incumbent upon plaintiff to show that he had not eaten or drunk anything that could have caused the sickness, other than the Coca-Cola. He failed in this respect and has therefore failed to make out his case.

The judgment of the lower court is correct and is affirmed, with costs.